UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY WEATHERSPOON,

Plaintiff,

v.

ROCK CONSTRUCTION COMPANY, INC.,

Defendant.

_______________________________________/

Case Number 18-13068
Honorable David M. Lawson

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

Plaintiff Tammy Weatherspoon filed a complaint in this Court alleging that her employer, Rock Construction Company, took adverse action against her motivated at least in part because of her race, and that the company retaliated against her when she complained about it. She brought claims under both federal and state law. The defendant moved to dismiss the complaint on several grounds, generally arguing that it does not state viable claims. Weatherspoon responded, the motion is fully briefed, and oral argument will not aid the Court in deciding it. Therefore, it is ordered that the motion be submitted on the papers. Because the complaint contains ample facts to support the claims, all of which were filed timely, the motion will be denied.

I.

The defendant filed its motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Therefore, the facts recited below are stated as they have been alleged in the complaint. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

The plaintiff, a 52-year-old African-American woman, began working for the defendant in February 2015 as a Leasing Professional at the Legends Rosewood Village Community, which is a residential complex operated by the defendant in Pittsfield Township, Michigan. She was paid

$14 per hour plus benefits. Some of the units in the complex were owner-occupied and others were rental units. Weatherspoon reported to Beverly List, who is a white female and the Community Manager of the Rosewood Village facility.

Weatherspoon initially was hired to work no more than 30 hours per week, but after two months List had expanded Weatherspoon's role to include some "managerial duties," and she "routinely worked 40 hours or more per week." Compl. ¶ 12, ECF No. 1, PageID.3. When she was hired, Weatherspoon was told by Amy Timbers, who was the defendant's Director of Property Management, that she would be considered for any prospective management jobs that might open up when the defendant acquired new properties.

Weatherspoon says that within the first six months of her employment, she experienced several incidents of racist conduct by List. In the first incident, sometime in the summer of 2015, List "read aloud" from a written complaint by a property owner, quoting a portion where the owner stated that there were "too many thugs and people of color" moving into the Riverwood complex. Weatherspoon perceived that the exhibition of reading from the letter was "an obvious attempt to embarrass" her. Compl. ¶ 15, ECF No. 1, PageID.3.

In the second incident, which occurred on an unspecified date, but apparently still in the summer of 2015, List was reviewing an application for purchase of a unit, which was submitted by a young woman of color, who indicated on her application that she held a graduate degree and a teaching position at the University of Michigan. The applicant also represented that her mother, who co-signed the application, had an income of $50,000 per year. List commented that she "did not believe" that the applicant's mother had such a substantial income, and Weatherspoon replied, "You don't believe her because she is a person of color." List "did not deny that the person's race motivated [the] comment." However, Weatherspoon searched for the applicant's mother on

Google and confirmed that she was "a person of means." After the applicant moved into the complex, she reported to List that she was being "harassed" by "white unit owners," but List did nothing about the harassment. *Id.* ¶ 16, PageID.3-4.

Finally, in August 2015, List gave Weatherspoon a "gift bag" that contained a scarf, a wallet, and a toy monkey. List told Weatherspoon when she gave her the gifts that the monkey "reminded List of Weatherspoon." *Id.* ¶ 17, PageID.4.

Weatherspoon was especially emotionally hurt by the final incident, and in late August or September 2015, she called the head of the defendant's Human Resources Department and complained about List's racist behavior and comments. Weatherspoon was told that the incidents she reported would be investigated. After several days, she spoke again with the HR representative, but was told that the HR department "can't go into detail about reprimanding List." However, shortly later Weatherspoon saw a letter of reprimand addressed to List which had been left in the open in the office — Weatherspoon believed because List wanted her to see it. List spoke to Weatherspoon later and said to her, "We need to talk . . . . I just did some of this stuff because I'm the CEO of the property and I should act like it." Weatherspoon then said, "I am sick over the monkey incident." List did not apologize but stated "Are we good?" Compl. ¶¶ 19-22, ECF No. 1, PageID.4-5.

Within three or four days after that conversation, List gave Weatherspoon a "new schedule" and informed her that her hours had been reduced from 40 hours per week to 12 hours per week. Weatherspoon immediately called the HR representative to "complain bitterly" about the schedule change, but it was not rescinded. Instead, later in the same day List and the HR officer called Weatherspoon at home; and the HR representative stated, "Beverly wasn't supposed to cut your hours — next time you want your hours cut it has to go through me." Weatherspoon objected and

said that List was lying and that she had never asked for her hours to be reduced, but the schedule change still was not reversed, and her full-time hours were not restored. Weatherspoon suffered with the reduced schedule for several more weeks, but she was unable to support herself on the reduced income, and eventually resigned in October 2015.

The plaintiff filed her complaint in this case on September 30, 2018. In Counts I and II she pleaded claims of race-based discrimination under 42 U.S.C. § 1981 and Michigan's Elliott-Larsen Civil Rights Act (ELCRA), respectively. Counts III and IV plead claims for retaliation under state and federal law based on the reduction of the plaintiff's work schedule following her complaints to Human Resource representatives about the alleged discrimination.

II.

The defendant argues that the plaintiff's discrimination claims under both federal and state law all are insufficiently pleaded, principally because she failed to allege that she was treated differently than any similarly situated member outside her protected class, and because the allegations of three racist comments over the course of several months are not sufficient as a matter of law to establish severe or pervasive conduct to support any claim on a hostile work environment theory. The defendant also contends that it cannot be held liable for the alleged racist behavior because it took "corrective action" by issuing a letter of reprimand. The defendant also asserts that the reduction of hours cannot comprise a "constructive discharge" for the purposes of the retaliation claim, because the plaintiff alleges that she was hired to work "no more than 30 hours per week," and, therefore, the reduction from 40 to 12 hours per week was within the original parameters of her job.

The defendant also asserts that the ELCRA claims should be dismissed because if all the federal claims are dismissed then there would be no basis for the Court to exercise supplemental

jurisdiction. The defendant also believes that the elements of the state law claims vary in certain nuances from those of the federal claims. Finally, the defendant contends that the ELCRA claims are time-barred under the applicable three-year statute of limitations because the last allegedly discriminatory comment was made in August 2015, but the complaint was not filed until September 2018.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A "claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matthew N. Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). When reviewing the motion, the Court "must 'construe the complaint in the light most favorable to the plaintiff[] [and] accept all well-pleaded factual allegations as true.'" *Id.* at 951 (quoting *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017)). Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

A.

Federal courts "'review claims of alleged race discrimination [and retaliation] brought under § 1981 and the Elliott-Larsen Act under the same standards as claims of race discrimination brought under Title VII.'" *Rogers v. Henry Ford Health System*, 897 F.3d 763, 771 (6th Cir. 2018) (quoting *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999); citing *Kuhn v. Washtenaw*

*County*, 709 F.3d 612, 627 (6th Cir. 2013); *Wade v. Knoxville Utilities Board*, 259 F.3d 452, 464 (6th Cir. 2001)). Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). In the ordinary case, to plead a claim of race discrimination under Title VII the plaintiff must state facts that show that the defendant took adverse action against her and that race was a motivating factor. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012). When it comes time to prove the allegations, these elements may be established by direct or circumstantial evidence. *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003).

The defendant's motion focuses on supposed deficiencies in the pleading of a *prima facie* case under the elemental framework laid out by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as modified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). But as the Supreme Court has held, that framework defines the plaintiff's evidentiary burden at the trial (or summary judgment) phase of a case on circumstantial proofs; it does not establish any special pleading requirements for discrimination actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 (2002) ("[A] complaint in an employment discrimination lawsuit [need not] contain specific facts establishing a *prima facie* case of discrimination under the framework set forth by this Court in *McDonnell Douglas*.").

The Sixth Circuit has explained that "the [complaint] need not present 'detailed factual allegations,'" to survive a motion to dismiss. Instead, it merely must contain "sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference,' that [the defendant employer] 'discriminate[d] against [the plaintiff]

with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin.'" *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678, 679; 42 U.S.C. § 2000e-2(a)(1)). The plaintiff has advanced sufficient facts here to suggest that the defendant discriminated against her on the basis of her race.

First, and contrary to the defendant's position, the abrupt drastic reduction of work hours certainly amounts to a material change in the terms or conditions of the plaintiff's employment, compared with the 40 hours per week that she had been working since a few weeks after she was hired. *Jordan v. City of Cleveland*, 464 F.3d 584, 596 (6th Cir. 2006) ("The repeated denial of 'acting time' resulted in a significant loss of economic benefits — money. Firefighter shifts are 24–hour shifts, so when a firefighter 'acts' as a Lieutenant, he gets paid as a Lieutenant for the entire shift. *That denial of money would more than amply qualify as a materially adverse action as to any reasonable employee for Title VII purpose*.") (emphasis added); *see also Arnold v. City of Columbus*, 515 F. App'x 524, 532 (6th Cir. 2013) ("Transfers can be considered adverse actions *if they are accompanied by a change in salary, benefits, title, or work hours*.") (emphases added).

The defendant contends that a reduction in work hours of 70% cannot be sufficient provocation to constitute a "constructive discharge." But in the case principally cited by the defendant itself, the Sixth Circuit established that reductions in salary and offers of continued employment "on less favorable terms" than those to which the plaintiff previously was subjected can sustain claims of constructive discharge, either singularly or when presented together. "Whether a reasonable person would have felt compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities [and] (7) offers of early retirement or

continued employment on terms less favorable than the employee's former status." *Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001) (adopting factors for evaluation of constructive discharge enumerated by the Fifth Circuit in *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)).

Second, there are adequate facts in the pleadings to support the inference that List imposed the work schedule change due to racial animus, based on the commentary relating people of color to "thugs," her insinuation that a woman of color could not have a substantial income, and the blatantly racist comparison of the plaintiff to a lesser primate. Overtly racist comments can comprise direct evidence of discriminatory animus, regardless of whether they were frequent or offensive enough to sustain a claim on a hostile work environment theory. *Chattman v. Toho Tenax America, Inc.*, 686 F.3d 339, 347 (6th Cir. 2012); *Curry v. SBC Communications, Inc.*, 669 F. Supp. 2d 805, 835 (E.D. Mich. 2009) ("The 'porch monkey' comment, for instance, likely would not by itself rise to the level of severity to constitute a hostile work environment. However, that comment is part of the circumstances, the totality of which must be considered in an assessment of the hostility of the workplace to the minority plaintiffs."). As the Supreme Court noted in *Swierkiewicz*, it is particularly inappropriate to require a plaintiff to plead elemental features of a circumstantial case for proving discrimination where those elements may not come into play if direct evidence of racial animus is uncovered through discovery. Here, there is a reasonable likelihood that such evidence may come to light based on the overtly racist comments described in the pleadings.

The plaintiff adequately has pleaded facts plausibly to suggest that the defendant discriminated against her based on her race.

B.

Title VII also prohibits an employer from retaliating against an employee who has opposed an "unlawful employment practice." 42 U.S.C. § 2000e–3(a). The elements of a Title VII retaliation claim are that: (1) an employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against her; and (3) there is a causal link between the protected activity and the adverse employment action. *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 796 (6th Cir. 2004), *aff'd* 548 U.S. 53 (2006) (citing *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 375 (6th Cir. 1984)); *see also Wasek v. Arrow Energy Services, Inc.*, 682 F.3d 463, 468-69 (6th Cir. 2012) (citing *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)).

The plaintiff has pleaded adequate facts to establish all of the required elements of her retaliation claims, which are evaluated under the same standards for both federal and state law. *Rogers v. Henry Ford Health System*, 897 F.3d 763, 771 (6th Cir. 2018).

First, the plaintiff's verbal complaint to the defendant's senior HR officer about List's allegedly racist conduct and comments certainly qualifies as protected activity, regardless of whether the racist episodes comprised any actually illegal conduct. "Under Title VII, there are two types of protected activity: participation in a proceeding with the Equal Employment Opportunity Commission ('EEOC') and opposition to an apparent Title VII violation. [The plaintiff] did not file a complaint with the EEOC, but complaining about allegedly unlawful conduct to company management is classic opposition activity." *Wasek v. Arrow Energy Services, Inc.*, 682 F.3d 463, 469 (6th Cir. 2012) (citations omitted). "[T]he only qualification that is placed upon an employee's invocation of protection from retaliation under Title VII's opposition clause is that the manner of [her] opposition must be reasonable. . . . [T]here is no qualification on who

the individual doing the complaining may be or on the party to whom the complaint is made known — i.e., the complaint may be made by anyone and it may be made to a co-worker, newspaper reporter, or anyone else about alleged discrimination against oneself or others; the alleged discriminatory acts need not be actually illegal in order for the opposition clause to apply." *Johnson v. University of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000); *see also Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 646 (6th Cir. 2015) ("[A]n employee is entitled to protection for opposition to employment practices that may not actually be unlawful under Title VII, [and the] employee who opposes a hostile work environment need not prove that the environment he complained of was actually hostile in order for the employee to receive protection from retaliation under Title VII."). The complaint to upper management about alleged racist discrimination by List against herself and a tenant certainly qualifies.

Second, the plaintiff adequately has alleged that List knew about the protected activity via the formal letter of reprimand that was addressed to her resulting from the complaint.

Third, the severely-reduced work schedule imposed within days after List was reprimanded based on the plaintiff's complaint counts as a materially adverse action against the plaintiff. As noted above, the abrupt reduction of work hours is sufficient to qualify as an adverse action even under the more demanding standard for discrimination claims, as it was a severe change in the conditions of the plaintiff's employment that cut off 70% of her usual wages. It patently qualifies as retribution sufficient to "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Rogers*, 897 F.3d at 776.

Finally, the allegation that the reduced schedule unilaterally was imposed by List, for no apparent reason, within days after the reprimand from HR, is sufficient to raise an inference of causation. *Rogers*, 897 F.3d at 776-77 (6th Cir. 2018) (finding a six-week delay between protected

conduct and adverse action sufficient to infer causation) (citing *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283-84 (6th Cir. 2012) (collecting cases holding that a two- to three-month time lapse between a plaintiff's protected activity and occurrence of a materially adverse action is sufficient temporal proximity to satisfy a plaintiff's *prima facie* case of retaliation))). Moreover, the allegation that List lied to the HR officer and stated that Weatherspoon asked for her hours to be cut bolsters the inference that the schedule change was motivated by retaliatory animus and belies any contention by the defendant that her action was motivated by any legitimate business concern. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 396 (6th Cir. 2008) ("[O]ne way a plaintiff can show pretext is by producing evidence that the proffered bases for the [adverse action] . . . are 'factually false.'" (citations and quotations omitted)).

C.

The defendant's position that the Court should decline to exercise supplemental jurisdiction over the state law claims is a non-starter. First, there is no basis for dismissal of the federal claims on the merits. Second, it is well settled that the exercise of supplemental jurisdiction over ELCRA claims raised on the same factual premises as closely related federal discrimination and retaliation claims is appropriate under 28 U.S.C. § 1367(a). *McDaniels v. Plymouth-Canton Cmty. Sch.*, 755 F. App'x 461, 468 (6th Cir. 2018) ("The district court had supplemental jurisdiction over Plaintiff's ELCRA claims for all three failures to hire. The Hulsing and Workman claims are sufficiently related to the Gallimore claim. The decisions were made close in time to one another, involved some of the same decision-makers, and involved reviewing McDaniels's work history and qualifications. Most importantly, PCCS advanced the same non-discriminatory rationales to explain all three decisions.").

Contrary to the defendant's position, it is equally well established that discrimination and retaliation claims are subjected to identical rules of decision under both federal and Michigan state law. "'Claims under Michigan's Elliott-Larsen Civil Rights Act involve the same analysis as Title VII claims.'" *Id.* at 469 n.3 (quoting *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 n.4 (6th Cir. 2003)). The defendant has not identified any "novel" or even outstanding issues of state law implicated by the garden variety racial discrimination and retaliation claims in this case.

D.

The defendant's argument that the ELCRA claims are time-barred similarly is unavailing, because the pleadings do not establish beyond debate that the last actionable discriminatory act by the defendant occurred more than three years before the complaint was filed. "Dismissal of a complaint because it is barred by the statute of limitations is proper [only] when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief." *Dimond Rigging Co., LLC v. BDP Int'l, Inc.*, 914 F.3d 435, 441 (6th Cir. 2019) (quotations omitted).

In this case, the plaintiff alleges that she was constructively discharged in October 2015, several weeks after her work schedule was severely curtailed. She filed her complaint on September 30, 2018, within three years after the alleged constructive discharge. It is well settled under federal law that the commencement of the limitations period in a constructive discharge case begins to run when the employee actually resigns. *Green v. Brennan*, --- U.S. ---, 136 S. Ct. 1769, 1777 (2016) ("Under the standard rule for limitations periods, the limitations period should begin to run for a constructive-discharge claim only after a plaintiff resigns. At that point — and not before — he can file a suit for constructive discharge. So only at that point — and not before — does he have a 'complete and present' cause of action. And only after he has a complete and present

cause of action does a limitations period ordinarily begin to run."). And the Michigan Supreme Court has followed similar reasoning in holding that in cases of alleged discriminatory discharge the cause of action is not complete, and the limitations period does not begin to run until, the date that the plaintiff is discharged. *Millar v. Constr. Code Auth.*, 501 Mich. 233, 240, 912 N.W.2d 521, 525 (2018) ("Simply put, a claim for discriminatory discharge cannot arise until a claimant has been discharged. [Here] the plaintiff was not discharged from his employment on March 31[,] his employment responsibilities were merely reduced." (citations and quotations omitted)). Thus, the limitations period did not begin to run until the plaintiff resigned in October 2015, and the facts, so far as they are alleged in the complaint, do not indisputably establish that the last discriminatory or retaliatory act was concluded outside the limitations period.

III.

The plaintiff has stated facts in her complaint that establish all the elements of her state and federal claims. The Court properly can exercise supplemental jurisdiction over the state claims, and there is no basis to decline to entertain them. And the complaint was filed timely.

Accordingly, it is **ORDERED** that the motion to dismiss (ECF No. 10) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date: October 16, 2019

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on October 16, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI